IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10cv123-V-5
5:05cr252

| | |
|---|---|
| TOMMY ZEKE MINCEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the Court on initial review of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, filed August 23, 2010. (Doc. 1.) For the reasons stated below, Petitioner's Motion is denied and dismissed.

**FACTUAL HISTORY**

The facts relevant to the Motion to Vacate are summarized in the Fourth Circuit Court of Appeals' opinion on Petitioner's direct appeal:

> [At] approximately 1:33 p.m. on October 3, 2005, Sergeant Randy Cass with the Iredell County Sheriff's Office stopped a 2000 Dodge four-door automobile with Georgia plates traveling south on Interstate 77 near Statesville, North Carolina. Sergeant Cass effected the stop because he observed the Dodge following the car ahead of it too closely, a violation of North Carolina traffic law. Once both vehicles were stopped on the side of the road, Sergeant Cass exited his police vehicle, walked toward the passenger side of the stopped vehicle, activated his microphone, and then asked the vehicle's driver and sole occupant-Mincey-for his driver's license. Mincey produced a Michigan driver's license in the name of Kenyatta Anthony James containing a photo that matched Mincey's physical appearance. Sergeant Cass advised Mincey why he had been stopped and then asked for the vehicle's registration. In response, Mincey produced a rental agreement from the Armada Rental Company, advising Sergeant Cass that the vehicle had been rented by his girlfriend in Georgia and that her name was on the rental agreement.
> . . .

At approximately 1:38 p.m., Sergeant Cass returned to his police vehicle with the driver's license and rental agreement that had been provided by Mincey, intending to verify the information provided to him and then to issue Mincey a warning citation for following the car ahead of him too closely. . . .

At approximately 1:50 p.m., Sergeant Cass called the Armada Rental Company and spoke with a woman named Chris to explain the situation, namely that he had stopped one of the company's rental vehicles on the highway for a traffic violation and that the driver and only occupant of the vehicle did not appear to be an authorized driver under the rental agreement. Sergeant Cass confirmed with Chris that Mincey was an unauthorized driver under the rental agreement, which Chris was able to review on the company's computer system. Sergeant Cass then asked Chris for consent to search the vehicle. In response, Chris advised that she would need to speak with a manager and that someone from the rental agency would need to call him back. Sergeant Cass then gave Chris his cell phone number.

At approximately 1:55 p.m., an additional officer-Sergeant Elliott-arrived at the scene. FN1 [footnote omitted] At this point, Sergeant Cass turned his microphone off in order to update Sergeant Elliott on his efforts to confirm the authenticity of the Michigan driver's license as well as Mincey's status as an unauthorized driver of the rental vehicle. At around this time, and while Sergeant Cass's microphone was off, another woman from the rental company, Kari Peabody, called Sergeant Cass on his cell phone. During the course of this conversation, Peabody instructed Sergeant Cass that the rental vehicle could not be released to Mincey, since he was an unauthorized driver under the rental agreement. (J.A. 79). Peabody further advised that the officers had permission to impound the vehicle or "to do whatever [they] needed to do." (J.A. 128). Sergeant Cass also asked Peabody if he could search the vehicle. According to Sergeant Cass's uncontradicted testimony, Peabody put the phone down briefly, apparently spoke with someone else at the rental company, then advised Sergeant Cass, "yes, go ahead." (J.A. 129). FN2 [footnote omitted]

At approximately 2:01 p.m., Sergeant Cass exited his police vehicle and walked back to the passenger side of the rental vehicle. He reactivated his microphone and asked Mincey to step outside of the rental vehicle so that he could explain the situation to him. Sergeant Cass then returned the Michigan driver's license to Mincey and handed him the warning citation, which Sergeant Cass had issued using the name on the Michigan driver's license and the Georgia address Mincey had provided. Sergeant Cass then showed Mincey the rental agreement and told him that he had spoken on the telephone with the rental company. Specifically, Sergeant Cass advised Mincey that the vehicle could not be released to his possession because he was not an authorized driver under the rental agreement. In light of this, Sergeant Cass also offered to drive Mincey to the next exit on the highway. Sergeant Cass then told Mincey that he and the other officers were going to search the vehicle and asked Mincey for consent to pat him down for weapons. Mincey consented to the pat down, which revealed a cell phone in his pants pocket.

2

. . .
>    Several minutes into the search, at approximately 2:07 p.m., Sergeant Cass pulled up the console around the vehicle's gearshift, a common site for concealing contraband, and there discovered a plastic bag containing what appeared to him to be illegal drugs. The package had been vacuum-sealed and wrapped in fabric softener sheets and was later confirmed to contain approximately 140 grams of high purity heroin. . . .
>    Immediately following discovery of the suspected contraband, Mincey was ordered to the ground and arrested. He was then transported to the narcotics office of the police department.FN4 [footnote omitted]  During an initial post-arrest interview with Detective Lieutenant David Ramsey, Mincey continued to identify himself as Kenyatta Anthony James, claiming that the Michigan driver's license was valid and contained his correct name and date of birth. Yet, when further questioned, he twice gave Detective Ramsey an age inconsistent with the date of birth listed on the driver's license.
> . . .
>    Later, in the course of subsequent questioning . . . , Mincey finally identified himself, for the first time, as Tommy Mincey; he also reported a birth date different from the date appearing on the Michigan driver's license.FN5 [footnote omitted]

United States v. Mincey, 321 F. App'x. 233, 235-238 (4th Cir. 2008) (unpublished).

## PROCEDURAL HISTORY

On October 25, 2005, Petitioner was charged in a one-count indictment with possession with intent to distribute at least 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. Petitioner filed a motion to suppress the evidence resulting from the search of the rental vehicle, arguing that the warrantless search violated his rights under the Fourth Amendment. The district court held a two-day suppression hearing and denied the motion to suppress on the grounds that Petitioner, as an unauthorized driver, had no legitimate expectation of privacy in the area searched and that, in any event, the rental car company had consented to the search. See Mincey, 321 F. App'x at 238-239.

On July 12, 2006, following a jury trial, Petitioner was found guilty as charged. He subsequently was sentenced to 150 months imprisonment, to be followed by eight years of

supervised release. Final judgment was entered on June 1, 2007.

Petitioner filed a timely notice of appeal, raising four issues, three of which concerned the district court's denial of his motion to suppress. In an unpublished opinion, filed November 24, 2008, the Fourth Circuit Court of Appeals affirmed Petitioner's conviction. See id., at 244. Petitioner sought rehearing en banc, which was denied. The United States Supreme Court denied certiorari on October 13, 2009. Mincey v. United States, 130 S.Ct. 395 (2009).

**DISCUSSION**

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, the district court judge assigned the motion must promptly examine it, along with "any attached exhibits and the record of prior proceedings," in order to determine whether the petitioner is entitled to any relief. If it is plain that the petitioner is not entitled to relief, the motion must be dismissed. See Rule 4(b) of the Rules Governing Section 2255 Proceedings.

**I. Right to Privacy Under Bailment Theory**

In his first claim, Petitioner contends that he had a legitimate expectation of privacy in the rental car under the theory of bailment. Petitioner asserts that because he had possession of the rental car as a bailee, he had a legitimate expectation of privacy in the area of the rental car that was searched. Petitioner's claim is denied for several reasons.

As an initial matter, notwithstanding his use of bailment terminology and citation to Georgia state statutes, Petitioner's claim is one alleging a violation of his right to privacy under the Fourth Amendment. Furthermore, Petitioner's Fourth Amendment claim is substantively the same as the Fourth Amendment claim that he unsuccessfully pursued on direct appeal. On appeal, Petitioner argued that because he had his girlfriend's permission to use the rental car, he had a legitimate expectation of privacy in the vehicle. The Fourth Circuit held that under circuit

4

precedent, Petitioner had no legitimate expectation of privacy in the vehicle because he was an unauthorized driver under the terms of the rental contract signed by the girlfriend. See Mincey, 321 F. App'x at 239-240 (citing United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994)). The fact that Petitioner now couches his claim in terms of bailment is a distinction without a difference.

Petitioner is "foreclose[d] [from] relitigat[ing] [] issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). Because Petitioner's claim is substantively the same as the claim previously rejected on direct appeal, he may not relitigate that claim under the auspices of § 2255, see Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976), unless he can point to some change in the law that has since made this claim viable on habeas review, see Davis v. United States, 417 U.S. 333, 342 (1974) (citation omitted). He has failed to identify such a change, and the Court is otherwise unaware of any change that compels a result other than the procedural bar of this claim. See United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir.2004) ("Because the Defendants have not pointed to any change in the law that warrants our reconsideration of these claims, ... they cannot relitigate these issues.") (citing Boeckenhaupt, 537 F.2d at 1183).

Additionally, to the extent that Petitioner's claim is not substantially the same as the Fourth Amendment claim raised on direct appeal, it is procedurally defaulted because it could have been raised on direct appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998) (Failure to raise a claim on direct appeal may result in procedural default barring collateral review.). In order to collaterally attack a conviction based upon errors that could have been but were not raised on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors complained of or that he is actually innocent of the crime for which he was convicted.

5

See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir.1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)).  Petitioner offers no evidence to establish "cause and actual prejudice" or that he is innocent of the crime for which he was convicted.  Therefore, his claim that he had a legitimate expectation of privacy in the rental vehicle under the theory of bailment is not cognizable under § 2255.

**II. Rental Car Company Could Not Consent to Search**

Petitioner contends that under the rental agreement between the rental car company and his girlfriend, the rental car company did not have the right either to consent to the search of the rental car or to instruct Sergeant Cass not to release the rental car to Petitioner.  Therefore, Petitioner claims, the search of the rental car violated his rights under the Fourth Amendment.  Again, this issue was decided on direct appeal.  See Mincey, 321 F. App'x. at 241.

On appeal, Petitioner claimed that the agency's consent to search did not provide an independent justification for the warrantless search when the vehicle had been rented to a third party.  See id.  The Fourth Circuit found it unnecessary to reach the issue of consent given its finding that Petitioner had no legitimate expectation of privacy in the rental vehicle at the time of the search.  See id.  Put another way, whether the rental agency had the power to give consent for the search had no bearing upon whether Petitioner, as an unauthorized driver, had a legitimate expectation of privacy in the vehicle at the time it was searched.  Therefore, even if the company breached the terms of its contract with Petitioner's girlfriend by consenting to the search, Petitioner cannot contest the search on Fourth Amendment grounds because, as an unauthorized driver, he had no legitimate privacy interest in the car.  See id. at 239 ("[I]t is well settled that only where a search intrudes upon a space as to which an individual has a 'legitimate expectation of privacy' may the individual contest the search on Fourth Amendment grounds.") (citing Wellons,

32 F.3d at 119).

Because Petitioner's claim is substantively the same as the claim previously rejected on direct appeal, he may not relitigate that claim under the auspices of § 2255, see Boeckenhaupt, 537 F.2d at 1183, unless he can point to some change in the law that has since made this claim viable on habeas review, see Davis, 417 U.S. at 342. He has failed to identify such a change, and the Court is otherwise unaware of any change that compels a result other than the procedural bar of this claim. See Roane, 378 F.3d at 396 n. 7.

Alternatively, to the extent that Petitioner's claim is not substantially the same as the Fourth Amendment claim raised on direct appeal, it is procedurally defaulted because it could have been raised on direct appeal. See Bousley, 523 U.S. at 621. Therefore, unless Petitioner can demonstrate both cause and actual prejudice resulting from the alleged error or that he is actually innocent, his claim is not cognizable under § 2255. See Mikalajunas, 186 F.3d at 492-93. Petitioner offers no evidence to establish "cause and actual prejudice" or that he is innocent of the crime for which he was convicted. Therefore, his claim that the search was unconstitutional because the rental car agency did not have the power to consent to the search is not cognizable under § 2255.

**III. Due Process Claim Concerning Credibility of Sergeant Cass's Testimony**

Petitioner claims that his right to due process was violated when the trial court made a credibility determination in favor of Sergeant Cass even though his testimony about the search of the car allegedly conflicted with the testimony of two other witnesses. As is the case with Petitioner's other claims, this claim is procedurally defaulted under § 2255.

As an initial matter, it is worth noting that the appellate opinion, in its statement of facts, refers to Sergeant Cass's testimony as "uncontroverted." See Mincey, 321 F. App'x. at 236 &

n.2.  Furthermore, this is a claim that could have been raised on direct appeal, but was not.  See

Bousley, 523 U.S. at 621.  Therefore, unless Petitioner can demonstrate both cause and actual

prejudice resulting from the alleged error or that he is actually innocent, his claim is not

cognizable under § 2255.  See Mikalajunas, 186 F.3d at 492-93.  Petitioner offers no evidence to

establish "cause and actual prejudice" or that he is innocent of the crime for which he was

convicted.  Therefore, Petitioner's claim that his due process rights were violated when the trial

court made an unfavorable credibility determination is not cognizable under § 2255.

## CONCLUSION

The Court has considered the pleadings and documents submitted by Petitioner and the

entire record of this matter, and it plainly appears to the Court that Petitioner is not entitled to any

relief on his claims.

## ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside, or

Correct Sentence (Doc. No. 1) is **DENIED and DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing

Section 2255 Proceedings, this Court declines to issue a certificate of appealability because

Petitioner has not made "a substantial showing of a denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  Petitioner has not demonstrated both that the Court's dispositive procedural rulings is

debatable and that his petition states a debatable claim of the denial of constitutional right.  See

Slack v. McDaniel, 529 U.S. 473, 484-85 (2000) (outlining what a petitioner must show to satisfy

the requirements of §2253(c) when the district court denies relief on procedural grounds).

Signed: September 13, 2010

*Richard L. Voorhees*

Richard L. Voorhees
United States District Judge